UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:05-CR-75 |
| | ) | |
| MICHAEL CARL VASSAR | ) | |

### MEMORANDUM OPINION AND O R D E R

This matter is before the Court on "Defendant Michael Vassar's F.R. Crim.P. [sic] 33 Motion For New Trial As To Count 1." [Doc. 523]. The government has responded [Doc. 534], the defendant has replied [Doc. 545] and the matter is ripe for disposition.

In his motion for new trial, the defendant asserts five grounds:

1. failure of the Court to instruct the jury that Rick Fann, a government informant, could not be considered a co-conspirator with defendant Vassar after Fann agreed to cooperate with the government on June 9, 2005;

2. failure of the government to disclose the identity of Rick Fann pursuant to *Roviaro v. United States;*

3. error in the Court's denial of a bill of particulars, certain discovery materials and untimely *Brady-Giglio* disclosures;

4. error in introduction of other acts evidence as to other controlled substances with which Vassar was involved; and

5. prejudice to the defendant "in preparing a meaningful

defense" as to the testimony of Rick Fann.

Fed. R. Crim. P. 33 provides that a court may grant a motion for new trial if it is necessary in the "interest of justice." The decision to grant or deny such a motion rests within the discretion of the district court and will be reversed only upon a showing of abuse of discretion. *United States v. Seago*, 930 F. 2d 482, 488 (6th Cir. 1991). The defendant bears the burden of proving the need for a new trial. *Id.* For the reasons that follow, the defendant's motion will be DENIED.

***Jury Instruction Concerning Testimony of A Paid Informant***

Defendant Vassar speculates in his motion that the jury may have found a conspiracy between Michael Vassar and Rick Fann, a government witness, and asserts that the jury should have been instructed that Fann could not be considered a co-conspirator for any illegal agreement after Fann's agreement to cooperate with the government on June 15, 2004. *See United States v. Cornell*, 162 Fed. Appx. 404 (6th Cir. 2006) (unpublished opinion) Defendant alleges that he requested such an instruction but that the Court denied his request.

As an initial matter, defendant's assertion that he requested such an instruction is incorrect. The defendant did orally request that the Court submit a special verdict form to the jury requiring the jury to name the persons who were found to be co-conspirators in the event of a guilty verdict and he requested that the Court charge the

names of the persons alleged by the government to be co-conspirators. [See Doc. 417] These requests were denied; however, the defendant never requested an instruction that Rick Fann could not be considered a co-conspirator based on any agreement with Vassar after June 15, 2004 nor did the defendant object to the failure of the Court to include such an instruction in its final instructions to the jury before the jury retired to consider its verdict.[1]

Even had the defendant been entitled to such an instruction, he has waived any defect in the charge. *Fed. R. Crim. P.* 30 provides, in pertinent part, that "[n]o party may assign as error any portion of the charge ***or omission therefrom*** unless that party objects thereto before the jury retires to consider its verdict" (emphasis added). The failure to request a jury instruction or to object to an instruction at trial results in a waiver of the issue and reversal is required only in exceptional circumstances to avoid a miscarriage of justice. *United States v. Nesbett*, 90 F. 3d 164, 167 (6th Cir. 1996)*; United States v. Hatchett*, 918 F. 2d 631, 643 (6th Cir. 1990).

In addition, this is not one of those cases where exceptional circumstances exist and a new trial is necessary to avoid a miscarriage of justice. Not only does the defendant's position require this Court to speculate as to the basis of the jury's verdict, the

---

[1] Not only did Vassar not request such an instruction, it is quite clear that the theory he is now advancing, that is, that the jury might have found Vassar guilty of a conspiracy with Fann did not even occur to Vassar's counsel until after the jury's verdict was returned. (See Doc. 485, Vassar's motion to question the foreman of the jury where, when discussing this theory, Vassar's counsel stated: "Attorneys often think of their best arguments after a hearing.")

3

defendant's position ignores the fact that Fann testified that he purchased cocaine from Vassar for months prior to his agreement to cooperate with the government on June 15, 2004. An agreement between Fann and Vassar before Fann agreed to cooperate with the government could in fact support the conspiracy conviction. Not only that, the record in this case is replete with substantial evidence to support a finding of guilt by the jury that an illegal agreement existed as charged in Count 1. The jury was clearly instructed that to return a verdict of guilty as to Count 1 they had to find beyond a reasonable doubt that Vassar was a conspirator in the conspiracy charged in Count 1 of the indictment, not some other conspiracy. Vassar's claim with respect to this issue is without merit.

Although not raised in his initial motion for a new trial, the defendant now alleges error in the Court's failure to give the "buyer-seller" instruction he requested. This Court properly denied Vassar's request to give such a charge and properly charged the jury concerning the elements of a conspiracy and the evidence necessary to establish Vassar's participation in a conspiracy. This argument is also without merit.

*Failure to Disclose Fann's Role as an Informant*

This issue raised by Vassar is likewise without merit. The defendant's argument here conveniently ignores that the government, on January 23, 2006, affirmatively identified Fann as the cooperating individual who purchased cocaine from Vassar on June 16, 2005 [Doc. 167] and it is quite clear from the record that Vassar was fully aware that Fann was a cooperating informant. Even if the disclosure of Rick Fann

4

as a paid government informer who actively participated in the crime were required, the purpose of such disclosure is to give the defendant an opportunity to access the possible helpfulness of the informant's identity to the defense. Clearly such purpose is met when, as here, the identity of the informant was formally disclosed by the government more than six months prior to trial. Furthermore, defendant's argument overlooks the inapplicability of *Roviaro* to an informant who testifies at trial and is subject to cross examination by the defendant. Where the informant testifies at trial, the defendant is no more entitled to disclosure of the informant's identity prior to trial than he is to pretrial disclosure of any government witness. *United States v. Perkins*, 994 F. 2d 1184, 1190-91 (6th Cir. ) *cert. denied* 510 U. S. 903 (1993).

***Alleged Error re Bill of Particulars, Etc.***

Defendant once again complains about the Court's previous orders denying him a bill of particulars, lack of discovery and untimely disclosures. These matters have been previously ruled upon by the Court and found to be without merit.

***"Other Acts" Evidence at Trial***

Vassar complains of the limited testimony by TBI Special Agent Jim Williams and Fann concerning Vassar's methamphetamine trafficking. This Court limited the government's witnesses with respect to any mention of methamphetamine and only allowed the government witnesses to testify concerning "other" controlled substances. It was, as the government points out, through Vassar's direct examination

5

of FBI Special Agent Kevin Keithly, called by Vassar as a witness, that the jury heard any specific mention of methamphetamine. The reference was brief and the government did not further mention other controlled substances in its arguments to the jury.

In any event, evidence of Vassar's sales of methamphetamine as well as cocaine to Fann were admissible as part of the "*res gestae*", or as necessary background, in view of the testimony of Fann in explanation of the code words used in the recorded conversation between Fann and Vassar (that is, reference to domestic car windows was code for cocaine and foreign car windows was code for methamphetamine). *See United States v. Hardy*, 228 F. 3d 745, 747 (6th Cir. 2000).

***Prejudice in Preparing a Meaningful Defense as to the Testimony of Rick Fann***

Defendant makes the incredible argument that he was prejudiced in preparing a meaningful defense to the testimony of Rick Fann "by learning that conduct for the first time during trial." While acknowledging that he was aware of the June 16 transaction, he argues that his failure to have been informed of the full extent of the conduct involving Fann and Vassar prohibited him from preparing a defense by obtaining Fann's telephone records, interviewing witnesses as to Fann's whereabouts, establishing that Fann did not have transportation during that period of time, locating other witnesses who knew Fann during that time or establishing where Mike Vassar was during that time.

Not only did Vassar receive a more than adequate defense at trial, defense counsel was nothing less than fully prepared to cross examine Fann. Given the thorough

6

Case 2:05-cr-00075-JRG   Document 561   Filed 08/30/06   Page 6 of 12   PageID #: 120

job done by defense counsel, it is inconceivable to this Court that counsel or his investigator did not investigate all of the matters raised in defendant's motion in preparation for trial. In any event, as this Court has previously ruled on numerous occasions, Vassar's counsel's expansive reading of the discovery rules as requiring the government to disclose to him every detail of the government's case is completely unsupported by any case law or statute. Not only that, learning of the specifics of conduct or testimony by a government witness at trial is normal for every criminal trial. No discovery rule requires the government to disclose the identity of its witnesses, much less the specifics of their testimony.

*"Unsolicited Juror Communication"*

While not specifically raised as a ground for new trial, defendant's request for an interview of the jurors and the filing under seal of an anonymous letter purporting to be from one of the trial jurors and arguably expressing misgivings about the jury's verdict is certainly related to the motion for a new trial. The letter, even if an authentic communication from one of the trial jurors[2], provides no basis for a new trial or even for an interview of the juror. Examination of the communication reveals that it contains <u>no</u> evidence that is admissible in an inquiry into the validity of the verdict against Vassar.

---

[2] Contrary to the defendant's assertion, the identity of the juror does not appear apparent from the communication itself, which is unsigned. Counsel for the defendant has offered to provide counsel's opinion concerning the identity of the juror to the Court; however, counsel's opinion would be of no assistance in resolving these matters.

7

At most, the letter simply contains information concerning the thought processes of the individual juror or other jurors.

The Supreme Court has long adhered to the general rule that a juror is incompetent to impeach his or her verdict. *See McDonald v. Pless*, 238 U.S. 264, 35 S. Ct. 783, 59 L. Ed. 1300 (1915); *Mattox v. United States*, 146 U.S. 140, 149, 13 S. Ct. 50, 36 L. Ed. 917 (1892). Federal courts applying the common law rule have held the testimony of jurors incompetent to show a compromised verdict, a quotient to verdict, speculation about insurance coverage, misinterpretation of the court's instructions, mistake in returning a verdict, and misinterpretation of the guilty plea of one defendant as implicating others. *Hyde v. United States*, 225 U.S. 347 (1912); *McDonald*, 238 U.S. at 264; *Holden v. Porter*, 405 F. 2d 878 (10th Cir. 1969); *Farmers Coop. Elevator Ass'n v. Strand*, 382 F. 2d 224 (8th Cir. ); *United States v. Chereton*, 309 F. 2d 197 (6th Cir. 1962); *United States v. Crosby*, 294 F. 2d 928 (2nd Cir. 1961).

Historically, a limited exception to the common law rule applied in cases where it was alleged that "extraneous influence" affected the jury. An extraneous influence on a juror is "one derived from specific knowledge about or a relationship with either the parties or their witnesses." *United States v. Herndon*, 156 F. 3d 629, 636 (6th Cir. 1998) (holding that jurors' recollection that he might have had previous dealings with defendant constituted an extraneous influence). Federal courts have applied the extraneous influence exception to allow juror testimony regarding statements made to the

8

jury by a bailiff, a juror's contact with a party during trial and a juror's contact with someone who suggested that the juror could profit by bringing in a verdict for the defendant. *Parker v. Gladden*, 385 U.S. 363 (1966); *Washington Gas Light Co. v. Connolly*, 214 F. 2d 254 (DC Cir. 1954); *Remmer v. United States*, 347 U.S. 227 (1954).

In 1972, the rule against impeachment of a verdict by juror testimony was codified in *Fed. R. Evid* 606(b). Rule 606(b) provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Rule 606(b) thus expressly bars juror testimony on three subjects:

(1) "any matter or statement occurring during the course of the jury's deliberations;"

(2) "the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment; and

(3) "the juror's mental processes in connection therewith." *Fed. R. Evid.* 606(b)

The rule creates two exceptions, permitting juror testimony on two questions only: (1) "whether extraneous prejudicial information was improperly brought to the

9

jury's attention," and (2) "whether any outside influence was improperly brought to bear upon any juror." *Id.*

> Public policy requires a finality to litigation. And common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberation of the jurors.

S.Rep. No. 1277 at 13 (1974), reprinted in 1974 U.S.C.C.A.N. 7051.

An "outside influence" refers to a factor originating outside of normal courtroom proceedings which influences jury deliberations, such as a statement made by a bailiff to the jury or a threat against a juror. *United States v. Jones*, 132 F. 3d 232, 245 (5th Cir. 1998). Internal influences include such matters as the pressure of one juror on another, juror misunderstanding of court instructions, a verdict achieved through compromise, juror misgivings about the verdict, and juror agreement on a time limit for a decision. *United States v. Logan*, 250 F. 3d 350, 380-381 (6th Cir. 2001) (holding that alleged misconduct consisting of potentially premature deliberations that occurred during the course of the trial constituted a potential internal influence).

At most, the letter filed by the defendant contains nothing more than the purported juror's own thought processes. (". . . I wanted to write you to tell you how

sorry I was that I couldn't convince the others to find him innocent of all charges";[3] "I do not feel the prosecution did a good job and in fact botched the whole trial"; "the only thing I could see any real evidence for was the 6.6 grams to Rick Fann on the tape"; "as far as the word of the prosecution witnesses, I wouldn't and didn't even consider it because I knew they were testifying to help themselves"; "I think your husband's attorney should appeal the two convictions because with the right jury, I am almost positive Mr. Vassar could be found not-guilty.") The letter does not raise any colorable claim of "extraneous prejudicial information" or "outside influence" as required by Rule 606(b) and Sixth Circuit case law.

In response to this Court's order that the defendant "show cause as to why the juror communication and the identity of the recipient, which is presently filed under seal, should not be unsealed" [Doc. 549], defendant Vassar asserts that "the juror communication should remain under seal until the court conducts an inquiry from the juror," [Doc. 557] and seeks to have the Court rule on whether or not the person who received the communication (presumably Mrs. Vassar) may interview the juror, whether the FBI can interview the juror under LR 48.1 and whether the Court will reconsider its prior ruling and interview the juror or the foreman of the jury. The Court, in a separate

---

[3] Vassar claims that it "is clear from the communication. . . that the juror believed Vassar to be not guilty of all the charges, however, for reasons unexplained, the juror went along with the other jurors." Such a conclusion is not at all clear. After the jury's verdict was announced, this Court polled the jury and each juror indicated, without hesitation, that the verdict represented the verdict of each juror. In any event, a juror's late misgivings about a jury verdict may not be used by a defendant to impeach the jury verdict.

11

order, has denied defendant's request that this Court interview jurors and declines to answer the other two questions submitted by the defendant.[4]

For the reasons set forth above, the defendant's motion for new trial is **DENIED**. In addition, Doc. 533 is **ORDERED UNSEALED.**

SO ORDERED.

ENTER:

                                              s/J. RONNIE GREER
                                              UNITED STATES DISTRICT JUDGE

---

[4] LR 48.1 is clear in its terms: "No attorney, party, or representative of either may interrogate a juror after a verdict has been returned or the trial has been otherwise concluded, without prior permission of the court." Even were Mrs. Vassar not considered a "representative" of the defendant, no useful purpose can be shown for her to interview any jurors due to the fact that the content of the letter, even if authentic, is inadmissible to attack the jury verdict. The rule applies equally to all parties, all attorneys and all representatives of either. In addition, contrary to the defendant's assertion, no reasonable interpretation of LR 48.1 requires the court to conduct any inquiry into communications by a juror.