UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

MICHAEL CARL VASSAR,   )
             )
  *Petitioner*,     )
v.            )  Nos. 2:11-cv-156; 2:05-cr-75(3)
             )  *Judge Greer*
UNITED STATES OF AMERICA,  )
             )
  *Respondent*.    )

## MEMORANDUM OPINION

Petitioner Michael Carl Vassar ("Petitioner" or "Vassar") has filed a *pro se* motion to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255, (Doc. 808).[1] The United States has filed a response in opposition, (Doc. 810). For the reasons which follow, the § 2255 motion to vacate will be **DENIED**.

## I. Standard of Review

Title 28 United States Code section 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so

---

[1] All citations to the record refer to Vassar's criminal case file (Criminal Number 2:05-cr-75).

fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings, *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), and he likewise bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively that the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## II. Procedural Background

In a superseding indictment filed February 14, 2006, Vassar was charged with two cocaine related offenses, (Doc. 238). Count One alleged that Vassar, Dewey L. Phillips, James M. Thornton, and Michael C. Gunter conspired to distribute and possess with the intent to distribute more than five kilograms of cocaine; Count Three alleged that Vassar distributed a quantity of cocaine , (*id.*).

At the close of an 8-day jury trial on June 21, 2006, petitioner was convicted of conspiring to distribute and possess with the intent to distribute less than 500 grams of cocaine, in violation

2

of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and for distributing cocaine, in violation of 21

U.S.C. §§ 841(a) and 841(b)(1)(C), (Doc. 489). Vassar filed a plethora of post-verdict motions,

(Docs. 485, 524, 527, 529, 539, 547, 550, 573, 576-79, 581, 589, 591, 593, 597, 601, 606-08,

621-22, 624-30, 634-35, 642, 647, 651, 653-56, 666-67, and 672,)[2], including a motion for a new

trial, (Doc. 523). The motion for a new trial was denied and, ultimately, the Court issued a

judgment, imposing a 144-month prison sentence concurrently on Counts One and Three and six

years' of supervised release, (Doc. 728).

Vassar filed a direct appeal and the judgment was affirmed. *United States v. Vassar*, 346

Fed. Appx. 17, 2009 WL 2959290 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3343, 176 L. Ed. 2d

1236 (2010). He then filed the instant § 2255 motion on May 27, 2011, (Doc. 808).

## II. Factual Background

The facts underlying the conspiracy conviction are taken from the Sixth Circuit's opinion

on Vassar's direct appeal.

> Numerous witnesses testified to Vassar's participation in the conspiracy. Stacey Lynn Phillips and Dewey Lynn Phillips said that they sold multiple-kilogram quantities of cocaine to Vassar from 2003 through the summer of 2005. According to Stacy (sic) Phillips, up until late summer or early fall 2003, Vassar bought a kilogram of cocaine from him every few weeks and claimed to be reselling it. Dewey Phillips testified that between January 2004 and mid-summer 2005, he sold Vassar an average of one kilogram per month, and that Michael Gunter told Dewey that he bought cocaine from Vassar. Daniel Rice stated that he purchased over two kilograms of cocaine, partially for resale, from Vassar between May 2004 and January 2005. Melissa Thomas witnessed Vassar distributing what appeared to be cocaine at a local bar. Finally, Rick Fann testified that Vassar sold him cocaine beginning in early 2005.

*Vassar*, 346 Fed. Appx. 17, 20.

---

[2] Eventually, an order was entered directing that Vassar file no further motions without leave of the Court and a showing of good cause, (Doc. 661).

3

The factual foundation for the distribution conviction lies in Rick Fann's testimony given during petitioner's trial. There, Fann stated that, on June 16, 2005, while wearing a wire and with money supplied to him by an agent with the TBI, he purchased a quarter of an ounce of cocaine from Vassar for $125 and that, following the transaction, he was paid $100 for his work as a CI, (Doc. 610, Testimony of Rick Fann at 8-16). The audio recording of the controlled buy was played for the jury.

### III. Law and Analysis

As grounds for relief in his § 2255 motion, Vassar maintains first that the prosecutor engaged in misconduct and failed to disclose material information, which (by inference) violates *Brady v. Maryland*, 373 U.S. 83 (1963); second, that the Court should have recused itself at his sentencing; third, that he received ineffective assistance from his trial attorney, Herbert Moncier; and fourth, that his sentence enhancement violates the ex post facto prohibition in the U.S. Constitution.

#### A. Prosecutorial Misconduct

These are the contentions Vassar offers in support of his first claim. During Vassar's trial, Stacey Phillips and unidentified officers who testified as prosecution witnesses stated that Stacey Phillips was going to be charged. This argument likewise was made by the United States attorney in his closing argument, wherein he represented that "no one would escape justice." (Vassar objected to this remark but the Court overruled it.) Yet after petitioner's trial, Stacey Phillips was allowed to plead guilty to a stipulated amount of cocaine, which was significantly less than the quantity for which he testified he was accountable. Also, Stacey Phillips was allowed to avoid a higher mandatory minimum sentence because the government did not file a § 851 information for

4

sentence enhancing purposes based on his prior felony convictions. (The prosecutor filed a § 851 information in Vassar's case, (Doc. 27).

Further, Stacey Phillips asserted, under penalty of perjury, in his § 2255 motion that the FBI told him that there were no plans to indict him and that, prior to Vassar's trial, he was promised and understood that he would not be prosecuted for his 2003 drug dealing to which he testified at Vassar's trial. Though the information was material to Stacey Phillips's credibility, the alleged promises were not disclosed to Vassar prior to or during his trial–an omission which entitles him to a new trial.

Finally, Dewey Phillips admitted to committing perjury, a fact which was not revealed to petitioner until much later, and this undisclosed information warrants an evidentiary hearing, preceded by an opportunity to conduct discovery relevant to the incident.

1.  Disparate Sentences

At the outset, the issue regarding the prosecutor's comment that "no one would escape justice" was raised as an illustration of prosecutorial misconduct in petitioner's direct appeal. The Sixth Circuit found persuasive the government's arguments that the challenged comment had support in the record (i.e., a government agent's testimony concerning pending charges against Stacey Phillips), and that the remark was responsive to Vassar's argument that the government allowed individuals who were more culpable than he to elude prosecution in exchange for their testimony against him. The Sixth Circuit went on to hold that this isolated remark was unlikely to cause prejudice and, in effect, did not amount to prosecutorial misconduct. Thus, the Sixth Circuit found no merit in the claim.

Likewise raised and argued, albeit as a challenge to the substantive reasonableness of petitioner's sentence, was the claim regarding sentencing disparities between his sentences and

5

those of his coconspirators, (Doc. 779, Sentencing Tr. at 11-12, 37, 40-43, 45, 54-55, 83, 89, and

135-137). This claim was resolved at the sentencing hearing, and in its opinion, the Sixth Circuit

related the Court's pertinent oral findings:

> Your attorney ... doesn't argue that somehow the government has
> made your sentence potentially higher through its charging decisions;
> he argues that the government has made others' sentences lower than
> the real conduct justified. I frankly don't see how you or any
> defendant in your situation can legitimately complain that somebody
> else has gotten a lesser sentence. To the extent that the government's
> charging decisions or plea bargaining decisions result in disparities, it
> seems to me that is up to the congress to address or the public to
> address; and that to [grant a larger downward variance in this case]
> would simply require this court to lower all sentences down to the
> level of the most lenient sentence that's been imposed. I don't think
> that's what the law requires ... and I reject that as a legitimate
> consideration in sentence.

*Vassar*, 346 Fed. Appx. at 29 (citing to Sentencing Tr. at 173-74).

Agreeing with this Court that the receipt of lesser sentences by petitioner's coconspirators

did not by itself prove that petitioner's sentence was unreasonably severe but was just as likely to

have shown that the coconspirators' sentences were too lenient, the Sixth Circuit likewise rejected

the claim.

Petitioner may not use a § 2255 motion to relitigate issues raised and considered on direct

appeal absent highly exceptional circumstances, such as an intervening change in the law.

*DuPonte v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996). There are no highly exceptional

circumstances here; thus, these sub-claims will not be entertained in this § 2255 motion.

2. *Brady/Giglio* Claims

The Court understands that petitioner's assertions concerning the withholding from the

defense information regarding promises and understandings on the part of Stacey Phillips that he

6

would not be prosecuted and Dewey Phillips's alleged admission of perjury are intended to be claims brought under the doctrine in *Brady v. Maryland*, 373 U.S. 83 (1963), as extended in *Giglio v. United States*, 405 U.S. 150 (1972). *Brady* requires the prosecution to disclose evidence favorable to an accused and material to guilt or punishment, *Brady*, 373 U.S. at 87, which includes impeachment material, such as an agreement allowing a witness to avoid future prosecution or harsher punishment. *Giglio*, 405 U.S. at 153-154.

Vassar did not raise these issues in his appeal. A claim not presented on appeal when it could have been presented may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse a failure to raise the claim previously. *Bousley v. United States*, 523 U.S. 614, 619 (1998); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner does not say when he learned of this information, but certainly the information involving Stacey Phillips's allegations of promises and understandings was available to him on September 2, 2008, the date the public docket sheet reflects that Stacey Phillips filed his § 2255 motion to vacate, containing those same contentions, (Doc. 32 in *Phillips v. United States*, Case numbers 2:08-cv-251; 2:07-cr-17).

Moreover, the information concerning Dewey Phillips's alleged perjury was available to petitioner much earlier than that, when the government disclosed to Vassar's counsel, by means of a facsimile sent to his office, that a polygraph examination administered to Dewey Phillips on July 6, 2006, had indicated that he had given deceitful answers to questions regarding "drug money," which were posed to him during the trial, (Doc. 666). Vassar filed his notice of appeal on February 28, 2007, (Doc. 729), and his appeal remained pending until September 16, 2009, when the Sixth Circuit issued its opinion in the case, (Doc. 799). Vassar offers nothing approaching cause and prejudice to explain his failure to present these alleged *Brady* violations in his direct

7

appeal. (Indeed, the issue involving Dewey Phillips's alleged perjury was presented in a *Brady* motion filed in this Court by Vassar's counsel on November 16, 2007, (Doc. 666)).

Hence, the Court concludes that petitioner could have presented these claims in his direct appeal. Vassar offers nothing to demonstrate cause for his failure to do so or any ensuing prejudice. Without a showing of cause and prejudice flowing from the alleged constitutional violation, these claims will not be reviewed due to Vassar's procedural default. *Bousley*, 523 U.S. at 619*; Elzy*, 205 F.3d at 884.

Even if these claims qualified for collateral review, Vassar could not prevail on them because the claims lack merit. A *Brady* claim is composed of three parts: (1) the evidence in question was favorable to petitioner; (2) the prosecution purposefully or inadvertently suppressed the relevant evidence; and (3) the suppression of the evidence resulted in prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

As the United States suggests in its response, the Court has entertained before claims regarding the government's alleged promises to Stacey Phillips and found them wanting, both in credibility and in substance. The Court initially determined that those allegations were contradicted in the record, (Doc. 40 at 12-17 in *Phillips v. United States*, 2:08-cv-251; 2:07-cr-17). The Court also found that no different result would have obtained had the government fulfilled its alleged promise:

> Even if Phillips could establish that the government had made a promise to move for a fifty percent downward departure, the government revealed the extent of the cooperation of Phillips to the Court and the Court heard extensive argument by [Phillips's] counsel … that a greater departure was warranted. [Since t]he Court rejected these arguments and exercised its discretion as to the extent of the departure, ... the government's recommendation would not have resulted in a different sentence for Phillips and he has suffered no prejudice," (*Id*. at 18 n.2).

8

"[T]here is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005) (quoting *Strickler*, 527 U.S. at 281, 119 S.Ct. at 1936). Accordingly, because Stacey Phillips's allegations of a promised motion for a 50% downward departure were not credited by the Court, had those allegations been revealed to Vassar earlier, no different result would have been reached based on such discredited allegations. In addition, because there was no credible evidence to establish the existence of a promise to Stacey Phillips, petitioner has not and cannot show that the prosecution purposefully or inadvertently suppressed proof of that non-existent promise.

As to Dewey Phillips's alleged perjury, the United States indicates that it first became aware of the matter on July 6, 2006—one month after Vassar's trial – when the results of a polygraph examination performed on Dewey Phillips indicated that he had falsely testified about the source of his assets.

As the Sixth Circuit has observed, the obligation imposed on the government to disclose material favorable evidence applies to evidence in its possession at the time of trial:

> "*Brady* requires that the prosecution disclose all exculpatory and impeachment evidence that is in the government's possession "*in time for use at trial*." [*United States v.*]*Presser*, 844 F.2d [1275,] 1283 [(6th Cir. 1988)]. This obligation entails "a duty to learn of any favorable evidence known to others acting on the government's behalf in the case." *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (emphasis added). But "*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess." *Id.*

*United States v. Smith*, 749 F.3d 465, 492 (6th Cir. 2014) (italics added). In other words, the prosecution cannot suppress proof at the time of trial which it does not have until after the trial.

9

Based on petitioner's procedural default and, alternatively, on the lack of merit, these claims furnish no basis for collateral relief.

## B. Recusal Claims

In the next claim, Vassar maintains that the Court failed to recuse itself when Mr. Moncier, his trial attorney, was cited for contempt of court and incarcerated on November 17, 2006. Petitioner charges that the Court, acting as the fact finder, determined that Mr. Moncier was guilty, but that the Sixth Circuit, finding that recusal was warranted in the contempt matter, reversed the determination of guilt. Petitioner finds relevant the fact that the conduct found to be contemptuous occurred prior to his sentencing; he thus concludes that the Sixth Circuit's reasoning in Mr. Moncier's case applies to his case too and shows that recusal likewise was warranted at Vassar's sentencing and at all the proceedings which followed.

In response, the United States argues that Vassar did not seek recusal at the time of his sentencing hearing, that he has supported his recusal claim with allegations of prejudice he suffered from the Court's presiding over his sentencing hearing, and that, at any rate, whether recusal was warranted in Mr. Moncier's case says nothing about the issue of recusal in petitioner's case.

The government's arguments are sound. Title Twenty-eight, section 455(a), reads: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Petitioner did not raise the issue of recusal or move for a recusal at his sentencing hearing or on appeal and he, thereby, has committed a double procedural default. *See United States v. Woodman*, 2000 WL 1234328, *6 (6th Cir. Aug. 21, 2000) ("Because [defendant] failed to raise in the district court

the recusal claim . . ., he has waived this argument."). A procedural default forecloses collateral review of a claim. *Bousley*, 523 U.S. at 619*; Elzy*, 205 F.3d at 884.

Nor has petitioner offered any factual contentions to show how he was prejudiced from any failure to recuse. There must be a sufficient factual basis to support recusal. *See United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983) (the facts must show that the judge's frame of mind prevents unbiased judgment); s*ee also Bryce v. Episcopal Church in the Diocese of Colo*., 289 F.3d 648, 660 (10th Cir. 2002) (noting that recusal cases are "extremely fact driven").

In this case, petitioner presents absolutely no facts to support that recusal was proper, nor is the Court aware of any that would suggest that recusal was appropriate. To the extent that the petitioner is relying on rulings in his case, rather than in Mr. Moncier's case, judicial rulings alone seldom serve as grounds for recusal. *See INVST Fin. Group, Inc. v. Chem Nuclear Sys., Inc.*, 815 F.2d 391, 396 (6th Cir. 1987) ("[A]ctions of a judge in pending or previous litigation in which the movant has been involved are not grounds for disqualification"). And certainly, petitioner had no true involvement in the substance of the contempt proceedings against Mr. Moncier. *See Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 396 (1990) ("A criminal contempt charge is likewise a separate and independent proceeding at law that is not part of the original action.") (citations and internal quotation marks omitted).

Vassar's citation to *United States v. Almany*, Criminal Case Number 2:07-cr-88 (E.D.Tenn.) (Doc. 132, Order of Recusal Jan. 1, 2008), calls for no different conclusion, as that case is factually distinguishable from petitioner's § 2255 case. In *Almany*, the recusal motion was made pre-trial and not, as here, in a § 2255 motion, well after the adjudication of guilt, the issuance of a sentence, and the conclusion of direct appeal. Secondly, at the time the Court disqualified itself in *Almany*, Mr. Moncier's case involving his criminal contempt before this

11

Court in Vassar's case was on appeal and also was the subject of a complaint lodged with the Board of Professional Responsibility, which had yet to be decided. Third, and quite significantly, the attorney who represented Almany and who filed the motion to recuse was Mr. Moncier himself. Following the Court's recusal, the case was reassigned to then Chief Judge Curtis L. Collier, who prompted by the United States' motion to disqualify counsel, held a hearing on the matter and thereafter issued an order disqualifying Mr. Moncier from Almany's representation due to a conflict of interest.

None of these issues are present in this case. This is a collateral proceeding; Mr. Moncier's federal criminal and state professional ethics cases have terminated; and Mr. Moncier is not representing Vassar in this § 2255 motion, as petitioner is proceeding *pro se*.

Petitioner is not entitled to relief on this claim because of his procedural default and, alternatively, because the claim is groundless.

## C. Ineffective Assistance of Counsel

As illustrations of ineffective assistance, petitioner presents eight shortcomings on the part of Mr. Moncier: (1) failing to request a jury instruction; (2) engaging in conduct which prejudiced his client's right to a fair trial; (3) failing to explore a possible negotiated plea agreement; (4) failure to object meaningfully to the use of acquitted conduct at sentencing; (5) findings by the Board of Professional Responsibility hearing panel in regard to Mr. Moncier's professional ethical transgressions (by inference) are relevant to whether counsel rendered ineffective assistance in Vassar's federal criminal case; and (6) – (8)  failing to object meaningfully to the use of acquitted conduct.  For purposes of succinctness, the Court has grouped claims 6-8 together with claim 4.

The law governing claims of ineffective assistance resides in the Sixth Amendment, which provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to

12

have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id*. As with any other claim under § 2255, a movant bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 454-455 (quoting *Strickland*, 466 U.S. at 694). A petitioner must demonstrate that, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the

13

proceeding unreliable." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

The Sixth Amendment right to counsel extends to plea negotiations. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010).

1. Jury Instruction

As the first instance of ineffective assistance, Vassar asserts that counsel failed to insist that the jury be instructed that it could not find Rick Fann to be a coconspirator because he was an agent of the government at the time he acquired 6.6 grams of cocaine from Vassar. This failure, so petitioner maintains, was enhanced by the language in Count 1, which identified "unknown conspirators."

As respondent points out, the Sixth Circuit, in resolving petitioner's challenge to the sufficiency of the evidence to support his conviction, held that the jury instructions with respect to conspiracy were not improper. After delineating the testimony offered against petitioner at the trial, including that of Fann, who averred that Vassar sold him cocaine beginning in early 2005, the Sixth Circuit stated:

> Despite all this testimony, Vassar urges us to vacate his conspiracy conviction because the jury "most likely" based its finding of guilt on the recorded sale of 6.61 grams of cocaine to Fann, who was cooperating with the government. Vassar correctly observes that an agreement with a government agent cannot constitute an unlawful conspiracy. In support of his argument, he notes that Count 3 involved a transfer of cocaine to Fann, and that the jury convicted him of conspiring to distribute less than 500 grams of cocaine, even though the evidence of the conspiracy involving the Phillipses and others indicated more than 500 grams of cocaine.

*Vassar*, 346 Fed. Appx. at 20-21. The Sixth Circuit ultimately found, in relevant part, that "Judge Greer's instructions accurately stated the law; indeed, Vassar does not contend otherwise."

To the extent that petitioner's ineffective assistance claim is bottomed on the same facts and argument rejected by the Sixth Circuit, then counsel cannot be ineffective for failing to request a jury instruction where the jury instructions have been held to be correct as a matter of law. *See Jones v. Consolidated Rail Corp.*, 800 F.2d 590 (6th Cir.1986) (no error to refuse to give a requested instruction, even one which correctly states the law, if instructions actually given fairly and adequately cover the material issues).

If the jury-instruction issue here presented is not the same one raised and decided in petitioner's appeal, then the following law and analysis apply. The jury instruction involving Fann's putative position as a government agent, which serves as the underlying basis for this ineffective assistance claim, is related to a defense of entrapment. *See United States v. Shameia*, 464 F.2d 629, 631 (6th Cir. 1972). That defense is composed of two related elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 62-63 (1988); *United States v. Khalil*, 279 F.3d 358, 364-365 (6th Cir. 2002). The main focus in this defense is "predisposition," which involves a determination as to "whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime*."* *Mathews*, 485 U.S at 63 (citations and internal quotation marks omitted). But a defendant who fails to advance evidence to support both elements is not entitled to an entrapment instruction. *Khalil*, 279 F.3d at 364.

Petitioner did not assert an entrapment defense at trial and nothing in the transcript suggests that he presented proof with respect to either element. Even if the Court assumes that Fann served as a government agent—a proposition for which there is no proof, there was no testimony or evidence adduced showing that Fann enticed petitioner to engage in the cocaine

15

conspiracy. Importantly, no evidence was presented to show a lack of predisposition on the part of petitioner to commit the conspiracy offense. Indeed, Fann testified that, prior to the controlled drug transaction on June 16, 2005 — the incident which underlies petitioner's allegation that Fann was a government agent – he (Fann) was buying cocaine from petitioner "every day or two or three times a day" for a period of time (Doc. 610, Fann test. at 4). This testimony shows that Vassar "was disposed to commit the criminal act prior to first being approached" by Fann on June 16, 2005, *see Jacobson v. United States*, 503 U.S. 540, 549 (1992), and that he was "an unwary criminal," who seized the opportunity to conspire to sell cocaine, and not an "unwary innocent" who had been induced to participate in the cocaine conspiracy for which he was convicted. *Sherman v. United States*, 356 U.S. 369, 372 (1958).

Given the lack of evidence to show any persuasion by Fann to induce Vassar to commit the offenses of which the jury found him guilty and the notable absence of proof of a lack of predisposition on Vassar's part, the jury instruction was not called for, and counsel did not give deficient performance by failing to request that it be given. *See Khalil*, 279 F.3d at 632.

Finally, there was no prejudice because other co-conspirators testified to the acts underlying the charge of conspiracy. *United States v. Munoz*, 1989 WL 2202, *4 (6th Cir. 1989) (finding that the requirements of conspiracy offense have not been met unless defendant conspires with at least one bona fide coconspirator). Because Vassar has not shown a prejudicial performance on the part of counsel, this ineffective assistance claim likewise fails.

2. Denied a Fair Trial by Counsel's Conduct

Petitioner next maintains that his right to a fair trial was adversely affected by the behavior on the part of counsel which ultimately led this Court to charge counsel with criminal contempt. More specifically, Vassar maintains that, very early in the proceedings, it became

16

evident from language used in orders entered by the undersigned and the Magistrate Judge that each judicial officer "was extremely frustrated/sick of Mr. Moncier's tactics, pleadings, and demeanor" and that this frustration culminated in a criminal contempt charge against counsel, (Doc. 808, § 2255 Motion at 16).

At the outset, the claim is conclusory. Notwithstanding petitioner's contention that language used in prior judicial orders reveals frustration with Mr. Moncier's actions, Vassar does not indicate which orders used such language, identify the questioned language in those orders, or show how the language somehow resulted in the claimed constitutional infringement here alleged. Conclusory claims such as this one offer no basis for relief. *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam) (finding that a claim unsupported by proof or any reference to such proof is legally insufficient to sustain a review).

Even if not conclusory, the claim is groundless. The misbehavior which led to the criminal contempt charge against Mr. Moncier occurred at Vassar's sentencing. During the sentencing proceeding, counsel interrupted this Court; threatened to abandon Vassar, to stand mute at sentencing; in essence, to provide ineffective assistance to counsel; disobeyed this Court's direct order; and suggested that if he did not engage in this type of behavior that he would be "walking into a 2255." *United States v. Moncier*, 571 F.3d 593, 595 -596 (6th Cir. 2009). Thus, to the extent that Vassar is claiming that counsel's conduct "early in the proceedings" (i.e., conduct other than that which occurred at sentencing) played a part in the contempt proceedings and denied him a fair trial, the record in this case and in Mr. Moncier's criminal contempt case shows otherwise. *Id*. at 594-98; *see also United States v. Moncier*, 2010 WL 4628234, 1 (E.D.Tenn. Nov. 8, 2010), *aff'd*, 492 Fed.Appx. 507, 2012 WL 2368891 (6th Cir. June 25, 2012). Indeed, during the sentencing hearing, this Court acknowledged its chagrin

17

with Mr. Moncier's prior conduct, but the Court also stated that "none of [counsel's previous behavior] has ... anything at all to do with what Mike Vassar's sentence ought to be in this case." *Moncier*, 571 F.3d 596-97.

Furthermore, as the United States argues, the Court bent over backwards to protect Vassar's right to a fair trial from counsel's deportment. It is important to note, however, that when the Court disqualified counsel from further representing petitioner in his criminal proceedings, Vassar filed a *pro se* motion seeking to reinstate Mr. Moncier as his defense lawyer. After questioning petitioner at a hearing on the motion and finding that Vassar was knowingly and intelligently waving conflict-free representation from Mr. Moncier, the Court granted the *pro se* motion. It also bears mentioning that, with Mr. Moncier's representation, the jury acquitted Vassar of the more serious charge of conspiracy to distribute more than five kilograms of cocaine and convicted him of a lesser offense of conspiracy to distribute less than 500 grams of cocaine. *See Moncier*, 2010 WL 4628234, at *2. These facts do not suggest that counsel rendered a deficient performance.

At any rate, given Vassar's failure to identify any specific instance showing that Mr. Moncier's comportment transgressed petitioner's right to a fair trial, he has failed to demonstrate that he suffered prejudice from any unidentified deficient performance on the part of Mr. Moncier. No relief is due petitioner with respect to this alleged attorney error.

3.    Plea Agreement Negotiations

Petitioner next contends that Mr. Moncier failed to explore meaningfully the possibility of a negotiated plea agreement, which, if one had been reached, would have lessened petitioner's sentence exposure. Vassar also asserts, in a related allegation, that counsel did not explain to him that, even if a jury found him not guilty of a greater amount of cocaine, the Court could still

18

impose a sentence of up to thirty (30) years imprisonment.

The record refutes the plea-agreement contention. At Mr. Moncier's trial on the contempt charge, Vassar testified that he rejected the government's offer of a reduced sentence because he refused to cooperate with law enforcement officials, (*United States v. Moncier*, Criminal Action No. 2:07-cr-40, Doc. 167, Trial Tr. at 182). Vassar could not cooperate, so he stated, because he "would have been lying on the people that [the government] wanted [him] to cooperate on" since he "didn't know what they were doing," (*Id.*). Thus, petitioner acknowledges both that there was a plea deal on the table and that he rebuffed the offer.

Further, even if the record did not contradict the plea-negotiation claim, it lacks substance. Where, as is alleged here, a petitioner rejects a plea offer due to ineffective assistance of counsel and is convicted at the ensuing trial, he must satisfy the prejudice test, by showing that: "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court,[3] that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe that under the judgment and sentence that in fact were imposed. *Lafler v. Cooper*, 32 S.Ct. 1376, 1384 (2012).

If the Court assumes, but does not find, that counsel rendered a deficient performance with respect to plea negotiations, petitioner has not made the necessary showing of ensuing prejudice to prevail on his claim. This is so because Vassar cannot establish that he would have accepted the government's plea offer, which included the cooperation clause, since his expressed reason for rejecting the plea bargain was the fact that it contained that clause.

---

[3] The "presented to the court" aspect of prejudice is two-stepped. It requires a petitioner to establish (1) that he would have accepted the plea and (2) that the prosecution would not have withdrawn it in light of intervening circumstances. *Lafler v. Cooper*, 32 S.Ct. 1376, 1384 (2012).

19

Nor can petitioner show that the United States would have agreed to excise a cooperation provision from any plea offer. Indeed, several of the government's witnesses who testified against Vassar at his trial did so because their plea agreements required their cooperation and provided that their failure to testify fully, truthfully and completely at any trial would free the United States to withdraw from the agreement or void any or all parts of that document. *See United States v. Dewey Lynn Phillips*, 2:05-cr-75 (Doc. 363, ¶ ¶ 3-4); *United States v. James Mark Thornton*, 2:05-cr-75 (Doc. 112, ¶ ¶ 5-6); *United States v. Stacey Lynn Phillips*, 2:07-cr-17 (Doc. 14, ¶ ¶ 6,15).

The Court discerns no explanation in the record, and none has been offered by Vassar, as to why the government would have excluded a cooperation provision from any proposed plea deal it offered to Vassar, contrary to the plea agreements extended to the defendants who testified against him. Moreover, following petitioner's rejection of the plea offer, he has not shown that the plea offer continued to be available to him. *See Ferreiras v. United States*, 895 F.Supp.2d 504, 512 (E.D.N.Y. 2012) (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012)). In sum, given Vassar's failure to demonstrate the requisite prejudice, the first claim in this category of ineffective assistance claims falls short.

As to counsel's failure to advise Vassar that the Court could consider the drug amounts involved in the cocaine conspiracy charge of which the jury found him not guilty and, based on this quantity of cocaine, could impose a sentence to thirty years, the Court has found no authority which requires that counsel give this specific advice to a criminal defendant to avoid an accusation of deficient performance.

To render effective assistance in a federal criminal case, counsel is expected to have "familiarity with the structure and basic content of the Guidelines." *United States v. McCoy*, 215 F.3d 102, 108, 342 U.S.App.D.C. 102, 108 (C.A.D.C. 2000) (quoting *United States v. Day*, 969

F.2d 39, 43 (3d Cir. 1992)). Counsel's "complete unfamiliarity" with the "structure and mechanics" of the guidelines, may constitute ineffective assistance. *United States v. Washington*, 619 F.3d 1252, 1259 (10th Cir. 2010). An attorney who generally understands the guidelines and is "familiar with the concepts" animating the guidelines has the skills to render competent representation with respect to guidelines sentencing. *United States v. Lundy*, 2012 WL 928697, *5 (E.D.Ky Feb. 27, 2012); *cf. United States v. Wolfe*, 2012 WL 1957427, * 11 (E.D.Tenn. May 31, 2012) (Counsel "who had never tried a federal criminal case before [and] lacked even a basic and rudimentary understanding of the Guidelines . . . necessary to provide proper advice to [defendant]," gave ineffective assistance.). It is evident, from the Court's past dealings with Mr. Moncier, that this experienced attorney understood the guidelines, was familiar with the structure and mechanics of the guidelines, and knew how the guidelines would apply to any sentencing decisions made in Vassar's case.

But even if the Court assumes that counsel gave a substandard performance in this instance, Vassar has not shown prejudice since he has offered no evidence or argument to demonstrate that the drug quantity attributed to him in connection with the acquitted charge would have been different based on the plea offer. *See United States v. Contreras-Castellanos*, 191 Fed.Appx. 773, 776, 2006 WL 2338082, *2 (10th Cir. Aug 14, 2006) (Prejudice is absent where there is "no evidence or argument that the relevant conduct attributed to [defendant] would have changed based on a guilty plea."). Indeed, had Vassar accepted the government's plea bargain, he would have been pleading guilty to the more serious cocaine conspiracy charge, which involved the 5 kilograms of cocaine at issue here. This means that the 5 kilograms would have been included in the sentencing calculation with a guilty plea (as part of the offense conduct) or without a guilty plea (as relevant conduct).

Finally, as the United States correctly observes, Vassar was advised at his initial appearance and arraignment before the Magistrate Judge that the punishment entailed for a conviction on Count 3 alone would be "not more than 30 years imprisonment," (Doc. 465, Initial Appearance & Arraignment Tr. at 4). Thus, regardless of the source of the information, petitioner was informed of the possible 30 year sentence he was facing. Therefore, Vassar cannot show that he was prejudiced from counsel's alleged omission as to his possible 30-year sentence. Vassar, therefore, has no ineffectiveness claim involving plea negotiations.

4. Acquitted Conduct[4]

Vassar's next claim is that Mr. Moncier failed to challenge, on several bases, the use of acquitted conduct in his sentencing. Among counsel's alleged errors was his failure to contest the use of acquitted conduct as a violation of Vassar's Sixth Amendment right to a jury determination. Along the same lines, Vassar also faults counsel for failing to show that his client had standing to assert that the use of acquitted conduct violates the right of a jury to participate in the administration of justice. Other purported attorney shortcomings, as the Court understands petitioner's allegations, include counsel's failure to argue that computation of a sentencing guidelines range which encompasses acquitted conduct must be proven beyond a reasonable doubt and that use of acquitted conduct violates fundamental fairness and notions of equality in the judicial process. To support these allegations, Vassar relies on *United States v. Cockett*, presumably found at 330 F.3d 706 (6th Cir. 2003), [petitioner supplied only the name of the case, not the entire citation], where the Sixth Circuit stated that a court cannot make a finding which "conflicted directly with the jury's verdict." *Id*. at 711.

---

[4] The arguments involving counsel's errors with respect to acquitted conduct were separately numbered as claims numbers (iv) and (vi) - (viii) in the § 2255 motion, but the Court has combined them into one claim to lend more cohesiveness to the discussion.

This claim has no merit. The use of acquitted conduct to enhance a sentence violates neither the Sixth Amendment jury-right guarantee nor the right to a fair trial protected by due process. *United States v. Settles*, 530 F.3d 920, 923 (C.A.D.C. 2008). The Supreme Court has sanctioned the use of acquitted conduct for sentencing purposes. More specifically, it has held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 156-57 (1997). Hence, "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008). The relevant statutory maximum sentence is not the top of the guidelines range, but instead that provided by the statute of conviction. *Id*. at 384-85. Thus, it is constitutionally permissible to consider acquitted conduct at sentencing, if "enhancements based on acquitted conduct do not increase a sentence beyond the maximum penalty provided by the United States Code." *Id*. at 384.

The statutory maximum based on the jury verdict was thirty years imprisonment, even before Vassar's acquitted conduct was considered. *See Vassar*, 346 Fed.Appx.17, 27, 2009 WL 2959290 (6th Cir. Sept. 19, 2009). Therefore, because Vassar's acquitted conduct had no effect on the statutory maximum, petitioner was not prejudiced by counsel's presumed failure to tell him that conduct underlying the more serious conspiracy count of which he was acquitted could still be used to increase his sentence. While Vasser may "understandably perceive unfairness when sentencing courts rely on acquitted conduct," it nonetheless remains that "the Constitution

does not prohibit a sentencing court from relying on acquitted conduct." *White*, 551 F.3d at 386 (quoting *Settles*, 530 F.3d at 923-24).

5.    Ethics Inquiry

In the last illustration of ineffective assistance, Vassar sets forth the findings of the hearing panel of the Board of Professional Responsibility, which was convened to determine whether Mr. Moncier's reported conduct during petitioner's sentencing hearing had violated canons of professional ethics. Petitioner makes no argument connecting the hearing panel's findings with any purported ineffective representation, but relies solely on a statement of those findings.

To the extent that petitioner is equating Mr. Moncier's ethical violations, as found by the hearing panel, with a *per se* violation of Vassar's right to ineffective assistance of counsel, courts have been unreceptive to this argument.  One court has pointed out that "the purpose of the Sixth Amendment is not primarily to police attorneys' ethical standards and create a constitutional code of professional conduct; its purpose is to assure a fair trial based on competent representation." *Beets v. Scott*,  65 F.3d 1258, 1272 (5th Cir. 1995).  As another court reasoned:  "[A] lawyer can be disciplined for a variety of reasons-merely because he is subject to disciplinary proceedings while representing a client does not mean that he is presumptively incapable of providing effective assistance." *Young v. Runnels*, 435 F.3d 1038, 1043 (9th Cir. 2006); *see also United States v. Nickerson*  556 F.3d 1014, 1019 (9th Cir. 2009) (A violation of professional conduct rules does not amount to per se ineffective assistance.) (listing cases).

At any rate, petitioner's claim of ineffective assistance lacks merit.  As stated earlier, to make out a claim of ineffective assistance, petitioner must first "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," *Strickland*, 466 U.S. at 690; next, he must show that counsel's errors were so egregious as to render

24

counsel's performance constitutionally deficient, *id*. at 687; and then, he must demonstrate that the deficient performance deprived him "of a fair trial, a trial whose result is reliable." *Ibid*. Petitioner has established none of these things and, thereby, has failed to show that relief is warranted on his final ineffective assistance claim.

D. *Ex Post Facto Claim*

In this last ground, Vassar asserts that his sentence violates the ex post facto clause in the Constitution and, alternatively, that counsel was ineffective for failing to make an ex post facto argument during the sentencing proceedings. Petitioner maintains that the conduct which underlay the charged conspiracy offense in Count 1 occurred in 2003-2005 and that these dates are important because they show that part of his conduct occurred when the guidelines were mandatory, whereas the guidelines became advisory in 2004, under the holding in *United States v. Booker*, 543 U.S. 222 (2004). Petitioner reasons that since it is the advisory nature of the guidelines which makes the use of acquitted conduct for sentencing constitutionally permissible and that since part of the acquitted conduct used to enhance his sentence occurred when the guidelines were mandatory, his sentence was unconstitutionally enhanced.

The Sixth Circuit has rejected a similar argument. "Because the guidelines are now advisory and not mandatory, a District Court may rely on extra-verdict facts or on those other than which the defendant has specifically admitted *when it calculates his sentence*." *United States v. Four Pillars Enterprise Co., Ltd.*, 253 Fed.Appx. 502, 506, 2007 WL 3244034, *2 (6th Cir. Oct. 30, 2007) (quoting *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006)) (italics added). As the Sixth Circuit recognized implicitly, the relevant time is not when a defendant engages in the criminal conduct but when his sentence is calculated. Vassar was sentenced under an advisory guidelines scheme and enhancing his sentence by using acquitted conduct was constitutionally

25

permissible.

But even if Vassar had been sentenced under a mandatory guidelines system, his acquitted conduct could have formed the foundation for the enhancement. As the United States suggests, that enhancement also was allowed under *Watts* when the guidelines were mandatory.

Because counsel has no duty to assert a legally baseless claim, *United States v. Martin*, 45 Fed. Appx. 378, 381 (6th Cir. 2002); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and cannot be ineffective when he does not raise that claim, *Greer v. Mitchell*, 264 F.3d 663, 676 (2001), petitioner's claim to the contrary is baseless.

## IV. Conclusion

Because all claims raised in this § 2255 motion are meritless, the Court will **DENY** the motion.

## V. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner, whose claims have been rejected on the merits, satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A petitioner, whose claims have been rejected on a procedural basis, must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

A separate order will follow.

**ENTER:**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE